FORT *v.* THE STATE.

By the act of October 24th, 1887, to regulate the business of insurance, no unincorporated company is required to obtain, or can obtain, from the insurance commissioner a license to transact the business of insurance in this State. And the penalty prescribed in the 9th section of the act for doing or performing any of the acts or things mentioned therein for any insurance company, is not applicable unless the company is one incorporated by the laws of this State, or some other State, or of a foreign government. According to the facts appearing in the record, the "Guarantee and Accident Lloyds" is a voluntary association, unincorporated, consisting of one hundred natural persons. This being so, that company cannot be licensed to transact the business of insurance in this State; and although there is no statutory authority for it to transact business without a license, a person who, as its agent, assists it in doing so, is not guilty of any offence.

July 3, 1893.

Accusation of misdemeanor. Before Judge WESTMORELAND. Criminal court of Atlanta. May term, 1893.

The facts were agreed on and submitted to the judge. He held the defendant guilty, and exception was taken

to the refusal of a new trial. On April 13, 1893, as agent for the Guarantee and Accident Lloyds, in Fulton county, defendant issued a policy of accident insurance, without the Guarantee and Accident Lloyds having received from the insurance commissioner of this State a certificate of authority or license for itself or its agents to transact business in Georgia. The business of accident insurance is carried on in New York by one hundred individuals under the above designation, each of whose names is signed to the policy, and each of whom is a citizen of that State. The articles of agreement under which they do business, and a power of attorney authorizing certain persons to do business for them, were in evidence, but need not be set forth here. The policy issued by defendant recites, that in consideration of $5, etc., each of the subscribers as a separate underwriter does, for himself and not one for the other, hereby insure, etc.; that each of the subscribers shall be individually liable for one hundredth part of the amount insured; and that each subscriber as a separate underwriter binds himself severally, and not jointly with any other, for the performance of the contract, etc.

HALL & HAMMOND, for plaintiff in error.

J. M. TERRELL, attorney-general, LEWIS W. THOMAS, solicitor, and HILLYER & LEE, *contra.*

LUMPKIN, Justice.

A careful reading of the act of October 24th, 1887, " to regulate the business of insurance in this State, and for other purposes" (Acts of 1886–7, p. 113), will satisfy the reader that the General Assembly intended therein to deal only with insurance companies *chartered* by this State, or other States, or by a foreign government. The second section of the act requires *incorporated* insurance companies to procure licenses from the insurance commissioner as a necessary prerequisite to the transaction of the business of insurance in this State;

but neither in this section, nor in any other portion of the act, is there any requirement that an *unincorporated* insurance company shall obtain a license, or any provision for the granting of a license to such a company. In view of this fact, it may well be doubted if the General Assembly had in contemplation the possibility that any insurance company without a charter would be likely to undertake to do business in Georgia. Otherwise, it is more than probable that the act would either have expressly provided for licensing unincorporated companies, or else have declared in terms that no such company should transact business in this State at all. It is therefore safe to assume that in the general scheme of the act, unincorporated companies were entirely overlooked. We are quite certain that the General Assembly could not have intended in an indirect manner to make penal the transaction of insurance business by an agent of an insurance company which had not procured a license from the insurance commissioner, when it had made no provision by which the company in question could obtain such license. It would have been much easier and more natural to declare that licenses should not be issued at all to unincorporated companies; and then, in general terms, make it penal for an agent to transact business for any insurance company not entitled by law to receive a license, or to carry on business in this State.

Our conclusion, therefore, is that the penalty prescribed in the second paragraph of the ninth section of the act, for rendering the services therein mentioned to "*any* insurance company," is not applicable unless the company is one which has been chartered under the laws of this or some other State, or of a foreign government; and this conclusion seems to be sustained not only by the reasons above stated, but is also borne out by the context of the section last mentioned. The follow-

ing is a copy of so much of that section as is material to the purpose in hand:

"That any person who solicits in behalf of any insurance company, or agent of the same, incorporated by the laws of this or any other State or foreign government, or who takes, or transmits, other than for himself, any application for insurance, or any policy of insurance to or from such company, or agent of the same, or who advertises or otherwise gives notice that he will · receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk at any time, or receive or collect or transmit any premiums of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or in behalf of any such company, whether any of such acts shall be done at the instance or request or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken.

"Any person, who shall do or perform any of the acts or things mentioned, for any insurance company, or agent of said company, without such company having first received a certificate of authority from the insurance commissioner of this State, as required by law, shall be guilty of a misdemeanor, and, on conviction in any court of competent jurisdiction, shall be punished as provided by section 4310 of the code of Georgia, and shall also pay a sum equal to the State, county and municipal taxes and licenses required to be paid by insurance companies legally doing business in this State; and it is hereby made the duty of the insurance com-

missioner to see that all violators of the provisions of this section are prosecuted."

It will be observed that the first paragraph undertakes to prescribe who shall be regarded as an agent of an insurance company chartered by the laws of this State, or some other State, or foreign government, and makes no allusion whatever to an agent of any insurance company of any other kind. The words " such company," "any such company," " any such insurance company," " any such company," and "such insurance company," used in the order stated in the paragraph designated, necessarily refer to an *incorporated* insurance company of some kind. This will be obvious from a reading of the paragraph.

The next paragraph provides, that " any person who shall do or perform any of the acts or things mentioned, for any insurance company " shall be guilty of a misdemeanor, and, on conviction, shall be punished, etc. It will be observed that in the second line of this paragraph, 'the use of the word ' such " before the word " company" is omitted. While it is true that the words " any insurance company " are, beyond doubt, of themselves sufficiently general to cover all insurance companies, whether incorporated or not, they must be construed with reference to the context, and also with due regard to the general scope and purpose of the act. All of the section preceding the words last quoted was indubitably intended to be applicable to agents of incorporated companies only; and the language following these words shows, we think, conclusively that the General Assembly intended to make penal the acts of those persons alone who were agents of insurance companies which the law required should obtain certificates of authority from the insurance commissioner of this State, but which had failed to do so ; and these companies, as we have seen, could, under the provisions of the act, be

incorporated companies only. It therefore seems free from all doubt that the words "any insurance company" must be construed to mean *any insurance company having a charter.*

The tenth section of the act provides, that "any insurance company, not incorporated or organized under the laws of this State, desiring to transact business in this State," shall appoint an agent upon whom service can be perfected; and we think that the words just quoted were intended to apply exclusively to incorporated insurance companies, and not to foreign companies having no charter. The proviso to this section declares, that its provisions "shall not be construed to alter or amend the laws now of force in this State relative to bringing suits and serving process on foreign *corporations* doing business in this State." As no reference whatever is here made to foreign companies other than corporations, we are strengthened in the opinion above expressed that, in passing the act in question, the General Assembly did not have in contemplation at all insurance companies which were not incorporated.

The evidence in this case showed that the "Guarantee and Accident Lloyds" is a voluntary unincorporated association consisting of one hundred natural persons. As has been seen, there is no provision of law for granting a license to such a company authorizing it to transact insurance business in this State, nor is there any statutory authority for it to transact business *without* a license. Nevertheless, we are fully satisfied that a person who, as its agent, assists it in conducting its business, is guilty of no criminal offence. We think this conclusion follows legitimately from what has been said, and in view of the rule that criminal statutes must be strictly construed, there is scarcely any room to doubt its correctness. In our judgment, the whole difficulty arises from the fact that the attention of the General

Assembly had not been called to the question of dealing with unincorporated insurance companies. Otherwise, the matter would doubtless have received the proper attention and direction, and we would find in the act now before us such provisions in regard to companies of this kind as the law-making power deemed it expedient to make. Whether such companies should be prohibited from transacting business altogether, or if not, upon what terms and under what penalties they should be permitted to do so, are questions purely for the General Assembly. As a court, we can do nothing but enforce the law as we find it. In the present case, we are therefore constrained to hold that the conviction of the accused was contrary to law.

*Judgment reversed.*